## WILSON v. COX.

1. ELECTIONS.—MANDAMUS will not lie to compel an officer to do an act which he cannot do under the law unless the Court set aside an election already held.

2. IBID.—DISPENSARY—DE FACTO OFFICERS.—Under the act known as the Brice act, a special election on "dispensary" or "no dispensary" should be conducted by commissioners of election, but such election will not be declared invalid where the managers were appointed by the supervisor, in good faith, and they, in good faith, conducted the election openly and fairly, at instance of one who had notice of all

these steps when taken and who does not move until result is declared.

*Dicta* MR. JUSTICE WOODS.

Petition in the original jurisdiction of this Court for mandamus by J. S. Wilson against J. E. Cox *et al.*

*Mr. W. Boyd Evans,* for petitioner.

*Mr. J. P. Carey,* contra.

March 1, 1906. The opinion of the Court was delivered by

MR. JUSTICE GARY. This was an application to Mr. Chief Justice Pope, and by consent heard by this Court in the exercise of its original jurisdiction, for a writ of mandamus requiring the respondents, who were the members of the county boards of control and the dispenser of Pickens County, to open and operate the dispensary at Pickens. The petition alleges that the respondents, on the 19th of June, 1905, unlawfully closed the said dispensary, and refused to open and operate the same. That there is no other dispensary in said town and county, and by said illegal action, the petitioner and other citizens are deprived of their right and privilege to purchase alcoholic liquors at said dispensary. The petition does not set forth the facts which render the closing of the dispensary illegal. A rule was issued requiring the respondents to show cause why the prayer of the petition should not be granted. They made a return setting forth the various proceedings which resulted in an election against the dispensary and the closing of the same.

The relator filed a reply to the return, alleging numerous grounds of illegality in the election, and that the statute commonly known as the Brice Act was unconstitutional. The last mentioned ground was, however, abandoned.

A special referee took the testimony, and reported his findings of fact as to the several steps in the said election, which, at least in the main, showed that it was valid.

The first question for consideration is whether proceedings by mandamus are the appropriate remedy. The office of the writ of mandamus is thus well expressed by Mr. Justice White, in the case of *International Cont. Co. v. Lamont,* 155 U. S., 303-308: "It is elementary law that mandamus will only lie to enforce a ministerial duty, as contradistinguished from a duty which is only discretionary. * * * Moreover, the obligation must be both peremptory and plainly defined. The law must not only authorize the act (*Commonwealth* v. *Boutwell,* 13 Wall., 526), but it must require the act to be done. 'A mandamus will not lie against the secretary of the treasury unless the laws require him to do what he is asked in the petition to be made to do.' *Reeside* v. *Walker,* 11 How., 272; see, also, *Secretary* v. *McGarrahan,* 9 Wall., 298, and the duty must be 'clear and indisputable.' *Knox County Commissioners* v. *Aspinwall,* 24 How., 376." This language is quoted with approval in *Lord* v. *Bates,* 48 S. C., 95, 26 S. E., 213.

Before the Court could issue the writ of mandamus, it would be necessary for it to declare the election null and void by reason of the various acts of alleged illegality.

It cannot be successfully contended that the duty of the respondents is ministerial, or clear and indisputable, when the law forbids the operation of the dispensary unless the election should be set aside.

The judgment dismissing the petition has already been filed.

MR. JUSTICE WOODS, *concurring.* I concur in the view that the election could not be adjudged invalid and set aside in a mandamus proceeding. But aside from that, the election was valid, and the petition would have to be denied on the merits. The only objection relied on by the petitioner was that the supervisor appointed the managers and performed all other duties as to this election, which under the law should have been performed by the commis-

sioners of election, and that the managers, therefore, acted without authority.

The act under which the election was held provides that upon the petition therein mentioned being filed with the county supervisor, "he shall order an election submitting the question of 'Dispensary' or 'No Dispensary' to the qualified voters of such county, which shall be conducted as other special elections." 24 Stat., 486. The reasonable interpretation to be given to this clause of the statute of 1904 is that the special election therein provided for should be conducted as other special elections, provision for the conduct of which was made by the law of force at the time the statute was enacted. The only statutory provisions for holding special elections in force when this statute was enacted are to be found in chapter X., article II., of the Civil Code. It is therein provided that "all general or special elections held pursuant to the Constitution of the State shall be regulated and conducted according to the rules, principles and provisions herein prescribed." It is subsequently enacted in the same chapter that the commissioners of election shall appoint managers and perform the other duties relating to the conduct of an election here undertaken and performed by the supervisor. In this respect, therefore, the election was plainly not conducted according to law. But it was conducted by managers who were *de facto* officers acting in good faith, believing the law required of them and the supervisor the duties they respectively undertook to perform; and the election was in all respects fair. In appointing the managers and performing other duties which the law assigns to the commissioners of election, the supervisor also acted under the mistaken belief that these duties devolved upon him. The petitioner does not allege he did not have notice before the election of these errors; on the contrary, full publicity was given to all these facts by the advertisement of the election. The question to be passed on by the electors was hotly contested and fully canvassed, and there was no objection to the regularity of the election until after the

26—73

result was announced. In these circumstances it is too late for those who relied on winning the election to attack its validity because one officer performed the duties of others, with full knowledge of the voters and others interested, no objection whatever being interposed until after the trouble and expense of the election had been incurred and the result ascertained. The election was valid because fairly conducted by *de facto* officers. *Donaldson* v. *Townsend,* 1 McM., 495; McCrary on Elections, sec. 251; Cooley's Cons. Limitations, 778; *People* v. *Cook,* 59 Am. Dec., 451 (N. Y.).